IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-cv-00626-M

LATOYA PHILLIPS,                          )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )          ORDER
                                          )
WAKEMED,                                  )
                                          )
          Defendant.                      )

---

This matter is before the court on Defendant's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). [DE 15]. Defendant contends that Plaintiff fails to state any plausible claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff counters that her allegations, taken as true, are sufficient to state plausible claims against the Defendant. For the reasons that follow, Defendant's motion is granted.

I.     **Background**

       A.     Plaintiff's Factual Allegations

       The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by Ms. Phillips in the operative Complaint [DE 1], which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Ms. Phillips's Complaint also includes 25 exhibits and where an allegation conflicts with an attached exhibit, "the exhibit prevails." *Goines*

*v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails.").[1]

Plaintiff Latoya Phillips is an African-American registered nurse with fourteen years of experience in direct patient care, nursing float pools, and nationwide traveling nurse contracts. Compl. at ¶ 7. Defendant WakeMed employed Ms. Phillips twice before re-hiring her for a third time in April 2019 as a registered nurse floater. *Id.* at ¶¶ 8–11. She worked at WakeMed's three campuses on a full-time or overtime schedule. Ms. Phillips alleges that throughout her employment, she was surrounded by mostly Caucasian nurses. *Id.* at ¶ 13.

That summer, Ms. Phillips began complaining to management about her job. On July 6, 2019, she emailed Kim Perdue, Staffing Resources Manager, to complain about "Staffer Kate" (last name unknown) who had cancelled Ms. Phillips's shifts back-to-back. *Id.* at ¶ 14 (Exhibit 1). On July 15, 2019, Ms. Phillips emailed Sharon McDonald, a nurse supervisor, and Ms. Perdue regarding staffing issues on two shifts that impacted nurse floats. *Id.* at ¶ 16 (Exhibit 2).

In October 2019, management received a complaint that Ms. Phillips wrongfully "dosed" a patient. On October 15, Beth Southerland, manager, reported Ms. Phillips to the Staffing Resources department for giving a patient morphine without a specific order, and Ms. Phillips received a written reprimand. *Id.* at ¶ 17. The next day, Ms. McDonald emailed Ms. Phillips requesting an explanation. Ms. Phillips explained that the on-call physician ordered the Morphine

---

[1] The court will consider the exhibits attached to the Complaint and two exhibits attached to WakeMed's Memorandum of Law in Support of its Motion for Judgment on the Pleadings: Ms. Phillips's Level 3 Disciplinary Action and her EEOC charge. These documents are integral to the Complaint, referenced therein, represented as authentic, and their authenticity is not challenged by the Plaintiff. *See, e.g., Braswell Egg Co., Inc. v. Poultry Mgmt. Sys., Inc.*, 481 F. Supp. 3d 528, 536 (E.D.N.C. 2020) ("In addition, a court may consider documents attached to a motion for judgment on the pleadings so long as those documents are 'integral to the complaint' and authentic.") (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014).

I.V. (delivered intravenously) because the patient could not take medicine orally. *Id.* at ¶ 18 (Exhibit 3). At the end of October, Ms. Phillips received an email thanking her and a fellow nurse for excellent patient care during a shift. *Id.* at ¶ 19.

Throughout November and December, however, Ms. Phillips continued to experience problems with cancelled shifts. On November 19, 2019, she complained to Ms. Perdue about several work shifts that Staffer Kate had cancelled. Compl. at ¶ 20 (Exhibit 4). Ms. Phillips was concerned about job stability and meeting her hour requirements. She also noticed that her shifts were cancelled more often than other white employees and without explanation. *Id.* However, her email states only that these cancellations are "more noticeable than any other staffer" and "when Kate cancels she only puts in comments canceled. Whereas some of the other staffers may list due to low census which shows the reason." Compl. (Exhibit 4).

Ms. Phillips next protested complex cases WakeMed assigned her, and complained she was not receiving adequate support from the nurse "leadership." *Id.* at ¶ 22. She attempted to discuss her issues with Ms. Perdue, and also expressed concerns to nurse supervisors, Ms. McDonald and Camille Scronce. *Id.* Ms. Perdue refused to listen to Ms. Phillips's concerns, stating "no, I don't want to hear it, Latoya." She accused Ms. Phillips of "always being involved in difficult patient cases" and stated, "it always seems to be you." *Id.* at ¶ 23. Ms. Perdue threatened, "if [she] hears Latoya's name involved in a difficult patient's case again, [she] will automatically discipline her." *Id.* Ms. Perdue then sent Ms. Phillips an Action Plan during the last week of December 2019 that Ms. Phillips alleges contained false statements about her. *Id.* at ¶ 24.

At the end of December, Ms. Phillips emailed Ms. Perdue requesting a meeting about possible permanent positions with benefits. *Id.* at ¶ 25. Ms. Perdue responded that there were no full-time positions available, and she did not foresee any openings in the next few months. *Id.* at

3

¶ 26 (Exhibit 5). Following the discussion, however, Ms. Phillips saw several job openings on WakeMed's job sites. *Id.* at ¶ 27.

On January 3, 2020, Ms. Phillips emailed Maria Nunez, Employee Relations, regarding a pattern of emails from nursing units blaming her for patient issues and making false claims about her. *Id.* at ¶ 28 (Exhibit 6). The eight-page email details her "difficult patients" and her disagreement with the complaints about her job performance. *Id.* Then, during her January 5, 2020 shift, Ms. Phillips alleges that she did not receive proper support from WakeMed. The assigned float unit did not provide her with the medical machines and supplies she needed, and she alleges she was falsely accused of being a problem nurse after completing tasks that should have been completed before her arrival. *Id.* at ¶ 29. As a result of her conduct on that shift, Ms. Phillips was sent home early. *Id.* On January 15, 2020, she informed Ms. Perdue that she was in the process of interviewing for a benefitted full-time position within WakeMed but after emailing Ms. Perdue, Ms. Phillips never heard back from the hiring manager or recruiter, even though positions remained available. *Id.* at ¶ 30. At the end of the month, Ms. Phillips received a second Action Plan she believes contained false accusations about her attitude and behavior. *Id.* at ¶ 31.

At Ms. Perdue's direction, on February 2, 2020, Ms. Phillips attended a WakeMed "compassion in action" class. She was the only float nurse asked to attend. *Id.* at ¶ 32. The next day, Ms. Phillips sent Ms. Nunez an email expressing concerns about Staffing Resources and requesting assurance that if she made such reports to Human Resources it would not leave her in a negative position with Staffing Resources. *Id.* at ¶ 33. Ms. Nunez assured her it would not, and forwarded the email to Ms. Perdue and Sandra Wheaton, Director of Staffing Resources, for review. *Id.* On February 26, 2020, Ms. Phillips emailed Ms. Scronce, Ms. Perdue, and Ms. McDonald to explain an issue with a new patient "admit" from February 22, 2020: Ms. Phillips

4

had not properly placed a precaution sign outside the patient's room and a lab technician entered without a surgical mask. *Id.* at ¶ 35 (Exhibit 10).

On March 4, 2020, Ms. Phillips interviewed with Kellie Babson for a permanent full-time position at WakeMed North but she never heard back, despite multiple vacancies. *Id.* at ¶ 36. On March 24, 2020, Plaintiff reached out to Sabrina Jones (position unknown) inquiring about any need for full-time nurses in her unit. *Id.* at ¶ 37.

Ms. Phillips alleges that on March 26, 2020, she was wrongfully blamed for incomplete tasks, she was never advised by the day nurse that there were unfinished tasks she needed to complete, and no one else was reported for not completing their tasks. *Id.* at ¶ 38. Specifically, a white nurse, "John," was never written up for not completing his assigned tasks that day. *Id.* Instead, WakeMed blamed Ms. Phillips for John's incomplete tasks. As a result, Ms. Phillips received a write up. No other float nurses in the same unit were disciplined for similar issues. *Id.* On the same day, Ms. Phillips emailed Ms. Scronce, Ms. Perdue, and Ms. McDonald responding to two allegations of her poor job performance: failure to notify a nurse and failure to remove a patient's catheter. Ms. Phillips provided an explanation for each episode. *Id.* at ¶ 39 (Exhibit 11). She also followed up on April 14, 2020, emailing Ms. Scronce regarding her employment concerns and stating she would not meet with Staffing Resources unless an assigned employee relations specialist attended. *Id.* at ¶ 40 (Exhibit 12).

On April 20, 2020, WakeMed issued Ms. Phillips a Level 1 Disciplinary Action Form. *Id.* at ¶ 41 (Exhibit 13). The form alleged Ms. Phillips did not complete tasks for three of her four patients on her March 18, 2020 shift. *Id.* The same day, Ms. Phillips filed her first Official Grievance and emailed Ms. Wheaton and Ms. Nunez confirming submission. *Id.* at ¶ 42 (Exhibit 14). Ms. Phillips's grievance alleged poor treatment despite following the chain of command, no

opportunity to explain her experiences on the units where she received disciplinary actions, and unfair treatment by WakeMed. She also requested a transfer. *Id.* Ms. Wheaton responded asking to schedule a meeting with Ms. Phillips about her grievance. *Id.* at ¶ 43.

On May 11, 2020, Ms. Phillips emailed Ms. Nunez requesting a response to her grievance. She reported continued shift cancellations and lack of direct communication with management. *Id.* at ¶ 45 (Exhibit 15). The next day, Ms. Phillips emailed Cindy Boily, Senior Vice President and Chief Nursing Officer, about her grievance. She informed Ms. Boily that Ms. Scronce had verbally told her, "you are to blame on all three campuses," and she attached a copy of her filed grievance. *Id.* at ¶ 46 (Exhibit 16). Ms. Boily upheld the Level 1 Disciplinary Action on May 27, 2020. *Id.* at ¶ 47.

Ms. Phillips then emailed Jeanene Martin, Senior Vice President of Human Resources, seeking to dismiss the Level 1 Disciplinary Action. *Id.* at ¶ 48 (Exhibit 17). Ms. Phillips stated that the Disciplinary Action was in retaliation for her reports of hostile and false perceptions of her job performance. *Id.*

On May 28, 2020, Ms. Wheaton informed Ms. Phillips that she still needed to sign up for work shifts during her grievance process. Ms. Phillips had not worked since May 7, 2020, but still had to meet certain hour requirements to stay at her base pay rate. *Id.* at ¶ 49 (Exhibit 18). Ms. Wheaton also advised Ms. Phillips that an experienced nurse would be assigned to observe and validate Ms. Phillips's practice. *Id.* (Exhibit 18 at 2) ("Given that there is such a difference in perceptions about your practice from your perspective and some of the nursing units we have received feedback from I am going to assign an experienced nurse to observe and validate your practice so we can try to understand why there is such a divergence in perceptions and can better formulate a plan to support you."). In June 2020, Ms. Wheaton requested Ms. Phillips decrease

6

her float pool pay option, which would decrease her pay, so she could keep her position during the grievance process. *Id.* at ¶ 52. On June 18, 2020, WakeMed President Donald R. Gintzig affirmed the Level 1 Disciplinary Action. *Id.* at ¶ 53.

At the end of June and start of July, Ms. Phillips completed three shifts observed by an assigned nurse. Thereafter, Ms. Wheaton imposed a Level 3 Disciplinary Action, stating that Ms. Phillips has a "pattern of poor performance and rude, discourteous and unprofessional behavior." *Id.* at ¶ 54–55. Ms. Phillips emailed Ms. Wheaton and Ms. Perdue requesting to speak by telephone about the observation and validation reports. *Id.* at ¶ 56. On July 14, 2020, Ms. Wheaton telephoned and terminated Ms. Phillips. During the call, Ms. Phillips was not permitted the opportunity to discuss her work during the observation shifts nor to address what she believed to be false accusations made against her. *Id.* at ¶ 57 (Exhibit 19). Ms. Phillips asked if she could resign when the grievance process ended, rather than be discharged, but on July 18, 2020, she received a Level 3 Discharge. *Id.* at ¶¶ 58–59; Def.'s Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mem.") at Exhibit 1 (Plaintiff's Level 3 Disciplinary Action recommending Level 3 Discharge).

Following her termination, Ms. Phillips contacted the Equal Employment Opportunity Commission ("EEOC") on July 20, 2020, to file a charge of discrimination. Compl. at ¶ 60. She then contacted Ms. Wheaton and Ms. Nunez requesting they dismiss the Level 3 Disciplinary Action. Compl. at ¶ 61. Ms. Phillips stated that she felt WakeMed retaliated against her after she contacted Human Resources about discriminatory behavior, which led to cancelled shifts, fewer work hours, and no scheduled hours for the previous two months. *Id.* The next day, Ms. Phillips sent her second grievance to Ms. Wheaton and Ms. Nunez. On July 31, 2020, Ms. Phillips emailed

her second grievance to Ms. Martin and Susan McFarland, Director of Employee Relations. *Id.* at ¶ 62.

On August 13, 2020, Ms. Phillips emailed Ms. Martin requesting a continuance of her second grievance hearing. *Id.* at ¶ 66 (Exhibits 21 & 22). Ms. Martin instructed Ms. McFarland to schedule the hearing. *Id.* at ¶ 67 (Exhibit 24). To date, however, Ms. Phillips has not received a hearing under WakeMed's grievance policy. *Id.* at ¶ 69.

B.    Procedural History

Ms. Phillips filed a charge of discrimination with the EEOC on August 13, 2020. Def.'s Mem. at Exhibit 3. The EEOC sent her a right to sue letter on August 25, 2020. Compl. at ¶ 68 (Exhibit 24). On November 23, 2020, Ms. Phillips initiated this action. [DE 1]. WakeMed filed an Answer on January 20, 2021 [DE 13], and the present motion for judgment on the pleadings followed on January 22, 2021 [DE 15]. WakeMed argues that the Complaint fails to state plausible Title VII claims. Ms. Phillips counters that her allegations, taken as true, plausibly state her claims.

## II.    Legal Standards

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the "same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the

8

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires these allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

*Twombly*'s plausibility standard applies to Title VII claims. A plaintiff need not plead a prima facie case of discrimination, retaliation, or hostile work environment to survive a motion to dismiss, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–515 (2002), but a plaintiff must "allege facts to satisfy the elements of a cause of action created by [the relevant] statute," *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). Thus, a plaintiff must plead a plausible claim that she suffered an adverse action "because of" her protected status. *McCleary-Evans*, 780 F.3d at 585. The prima facie elements are helpful, but not dispositive, in determining whether a claim under Title VII is plausible. *Lowman v. Maryland Aviation*

*Administration*, No. CV JKB-18-1146, 2019 WL 133267, at *5 (D. Md. Jan. 8, 2019). A claim under Title VII is not plausible when its allegations "leave[ ] open to speculation the cause for the defendant's" adverse employment action against plaintiff, and when the "cause [plaintiff] asks us to infer (i.e., invidious discrimination) is not plausible in light of [an] obvious alternative explanation." *McCleary-Evans*, 780 F.3d at 588 (internal quotation marks omitted); *see also Woods*, 855 F.3d at 649 ("Still, under *Iqbal* and *Twombly*, the Court must consider the plausibility of inferring discrimination based on [plaintiff's] allegations in light of an 'obvious alternative explanation' for the conduct. . . . In other words, while [plaintiff] need not establish a prima facie case at this stage . . . we must be satisfied that the [defendant's] explanation . . . does not render [plaintiff's] allegations implausible.").

## III.  Analysis

### A.  Race Discrimination

Ms. Phillips's second cause of action alleges race discrimination. At this stage, her allegations must raise an inference that WakeMed took an adverse action against her "*because of* [her] race." *See McCleary-Evans*, 780 F.3d at 585. Given Ms. Phillips does not allege direct evidence of discrimination, her allegations must raise a plausible inference of discrimination. "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

WakeMed does not dispute elements one and three of Ms. Phillips's prima facie case. She alleges she is an African American and WakeMed fired her; thus, her allegations reflect she is in

10

a protected class and suffered an adverse employment action. Compl. at ¶¶ 7, 57–59. However, Ms. Phillips fails to state a plausible claim of race discrimination because her allegations do not satisfy the second and fourth elements. As a result, this court cannot plausibly infer that WakeMed took an adverse employment action against Ms. Phillips because of her race.

### 1. *Satisfactory job performance*

To state a plausible claim of race discrimination, Ms. Phillips must allege facts to support a plausible inference that "at the time of [her] discharge, [s]he was performing [her] job at a level that met [her] employer's legitimate expectations." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). Failure to do so can be grounds for dismissal because it demonstrates an "obvious alternative explanation" to invidious discrimination: that plaintiff was fired because of her job performance. *McCleary-Evans*, 780 F.3d at 588; *see also Boney v. Trustees of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019) ("Boney fails to plausibly allege that, but for her age, Cape Fear would not have taken these actions. Boney's allegations make clear that Cape Fear took these actions concerning oversight and training in response to Boney's poor performance, not to her age.").

Ms. Phillips fails to plausibly allege satisfactory job performance. Her allegations of satisfactory performance are conclusory and contradicted by her exhibits, which provide numerous examples supporting WakeMed's belief that Ms. Phillips's performance was not satisfactory. While Ms. Phillips disagrees with WakeMed's perspective, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000).

For example, Ms. Phillips received two action plans and two disciplinary actions from WakeMed, and she admits WakeMed received numerous complaints from patients, coworkers,

11

and supervisors about her performance. Compl. at ¶¶ 16 (Exhibit 2), 17–18 (Exhibit 3), 23–24, 28 (Exhibit 6), 29 (Exhibit 7 & 8), 31, 35 (Exhibit 10), 38–39 (Exhibit 11), 41 (Exhibit 13), 47, 53–55. Based on complaints about Ms. Phillips, WakeMed issued her a Level 1 Disciplinary Action. *Id.* (Exhibit 13). This Disciplinary Action notes that on March 18, 2020, Ms. Phillips failed to complete tasks for three of her four patients; these tasks included not removing a catheter as ordered by a physician and not notifying a charge nurse that her patient needed labs collected. Compl. at ¶ 41 (Exhibit 13). Further, the Disciplinary Action states that Ms. Phillips experienced "challenges related to her lack of knowledge on how to properly administer a heparin bolus and albumin" and "fail[ed] to appropriately place an isolation sign on her patient's door," which put a lab technician at risk. *Id.* The report acknowledges, "Latoya has denied and/or provided a rebuttal for each complaint" but "complaints against Latoya Phillips have been received from a variety of units across three WakeMed facilities." *Id.* As a result, WakeMed issued an Action Plan addressing her "pattern of patient complaints related to a lack of professionalism; negative attitude;" and problems with "respect for people and communication." *Id.* Moreover, in response to Ms. Phillips's allegations that these complaints were false, WakeMed assigned experienced nurses to observe Ms. Phillips's practice, and they identified serious problems, resulting in a Level 3 Disciplinary Action. Compl. (Exhibit 18); *see also Pennell v. WakeMed*, No. 5:19-CV-6-FL, 2019 WL 4924457, at *2 (E.D.N.C. Oct. 4, 2019) (finding poor job performance when plaintiff "received [her] 90-day performance review," and it explained she "was not performing [her] job in accordance with [her employer's] expectations."). This second action noted Ms. Phillips was late for two of her supervised shifts, was "rude, discourteous and unprofessional," and is "not able to safely practice in her float pool position." Def.'s Mem. at Exhibit 1.

Ms. Phillips attempts to counter WakeMed's arguments by pointing to allegations reflecting legally irrelevant self-assessments of satisfactory performance and conclusory assertions that the complaints against her are false. She denies these complaints have merit but does not dispute that patients and coworkers made these numerous complaints about her. Ms. Phillips argues her allegations demonstrate satisfactory job performance based on the following: (1) a January 3, 2020 letter to Ms. Nunez in which Ms. Phillips stated, "it is [her] practice to document a progress note, notify the physician, and report to the charge nurse on duty if [she has] any concerns," Compl. at ¶ 28 (Exhibit 6 at 1); (2) an October 21, 2019 email thanking Ms. Phillips for excellent patient care during a shift, *id.* at ¶ 19; and (3) an April 20, 2020 letter to Ms. Wheaton, in which she noted that units within her float schedule have "thank[ed] [her] for a job well done," Compl. (Exhibit 14 at 1).[2] Ms. Phillips contends her allegations contradict WakeMed's perspective of her performance and thus WakeMed's views of her job performance are "not actually legitimate." Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings ("Pl.'s Resp.") at 9.

Ms. Phillips's argument misses the mark. First, "her own self-assessment of her job performance criteria . . . is not probative of defendant's assessment of plaintiff's performance at the time of discharge." *Pennell*, 2019 WL 4924457, at *4. For example, in a similar case before the Fourth Circuit, when a plaintiff argued "she performed well in her job and offer[ed] evidence in an effort to support [her] contention, including e-mails and memoranda written by [plaintiff] herself and statements allegedly made by her co-workers," the Court found that the plaintiff

---

[2] Ms. Phillips attaches three documents to her Response Brief attempting to show satisfactory job performance. [DE 22-1, 22-2, 22-3]. These documents were not attached to her Complaint. These documents are not "integral" to the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011); *Goines*, 822 F.3d at 165–66. "And [Ms. Phillips] may not amend her complaint via briefing." *Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017). Therefore, the court will not consider these documents. Moreover, even if the court considered these documents, it would not change its analysis.

13

"prove[d] only the unremarkable fact that she and [her employer] disagreed about the quality of her work." *Hawkins*, 203 F.3d at 280. The Court stated this did nothing to prove the plaintiff's claim because "we have repeatedly held that in a wrongful discharge action '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" *Id.*

Second, a single compliment months before termination does not establish satisfactory job performance in light of the numerous complaints from patients and coworkers that followed; nor can it establish satisfactory performance at the relevant time—the time of termination. *Ramseur v. Concentrix CVG Customer Mgmt. Grp. Inc.*, 467 F. Supp. 3d 316, 324 (W.D.N.C. 2020), *aff'd*, 837 F. App'x 204 (4th Cir. 2021) ("Specifically, the Court looks to the perception of the decision-maker in considering whether the employee was meeting job expectations *at the time of dismissal*." (emphasis added) (internal quotation marks and citation omitted)). Third, courts have repeatedly held that plaintiffs fail to state claims for discrimination under Title VII when, as here, a plaintiff has received formal notice that her employer finds her performance unsatisfactory. *Boney*, 366 F. Supp. 3d at 760, 764; *Pennell*, 2019 WL 4924457, at *3. WakeMed provided Ms. Phillips numerous formal reports of poor performance supported by complaints from coworkers and patients. Ms. Phillips's conclusory allegations and self-assessments to the contrary ask this court to infer "invidious discrimination," but her allegations are "not plausible in light of the obvious alternative explanation" that Ms. Phillips was fired "in response to [her] poor performance, not to her [race]." *McCleary-Evans*, 780 F.3d at 588 (internal quotation marks omitted); *Boney*, 366 F. Supp. 3d at 764.

2. *Disparate treatment compared to similarly situated employees outside protected class*

Ms. Phillips also does not plausibly allege the fourth element necessary to demonstrate a Title VII discrimination claim. She does not identify similarly situated comparators from which a

14

plausible inference of discrimination can be drawn. Most importantly, she fails to identify any individual with a similar performance record to her own. While "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons" are generally left for summary judgment, *Woods*, 855 F.3d at 650–51, a plaintiff must still "establish a plausible basis for believing [plaintiff and comparator] were actually similarly situated or that race was the true basis for" defendant's adverse action against plaintiff. *Coleman*, 626 F.3d at 191. "Overall, the [similarly situated] inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (citation omitted).

Ms. Phillips's assertions that she suffered adverse action "because of" her race are conclusory, and her allegations do not establish valid comparators. Ms. Phillips alleges that she "was an African American float nurse surrounded by mostly white nurses." Compl. at ¶ 13; Pl.'s Resp. at 9. That she "was not afforded the same premium pay and bonuses as the other white nurses received in the float pool" and that "[w]hite float nurses received priority for getting hired on as permanent float pool staff with included better pay and benefits, while Plaintiff was informed that there were no positions available, contrary to WakeMed's job site." Compl. at ¶ 81(c), (g). She also argues, based on her allegations, that she "became the scapegoat of her departments, as she was often assigned difficult patients without adequate assistance." Pl.'s Resp. at 9; Compl. at ¶¶ 16, 23, 28, 29, 38, 46, 81(a). Finally, she alleges she was blamed for the incomplete assignments of a white nurse named John. Compl. at ¶ 39.

15

However, an inference of race discrimination from these allegations "is not plausible in light of [an] obvious alternative explanation." *McCleary-Evans*, 780 F.3d at 588 (internal quotation marks omitted). Ms. Phillips's own Complaint demonstrates that the "different" treatment she received compared to other nurses was "because of" her job performance, not race. *See infra* Section A.1. Ms. Phillips does not address this difference in performance. She asserts merely that other nurses, mostly white, were treated differently than her in numerous ways. Compl. at ¶ 81. She makes conclusory statements that this differential treatment is based on race but her own Complaint demonstrates that her employer believed her job performance was poor.

What is more, there are no allegations that the other mostly white nurses received the same performance complaints and disciplinary actions that she received. In *Swaso v. Onslow County Board of Education*, the Fourth Circuit dismissed a similar claim because plaintiff's "bare allegations [were] insufficient to raise her right to relief above the speculative level." *Swaso*, 698 F. App'x at 749. In *Swaso*, the plaintiff "alleged that, unlike her, some white teachers were permitted to return to work with more severe restrictions or medical conditions, and that some white employees were permitted to return with similar standing restrictions." *Id.* at 748–49. Yet the plaintiff "failed to provide any factual enhancement regarding the alleged comparators—such as the medical conditions or restrictions of the white teachers who were allowed to return, or the positions or job requirements of those employees allowed to return with standing restrictions— that would permit the court to reasonably infer their similarity." *Id.* at 749. Ms. Phillips has made the same mistake. She has not alleged any "factual enhancement regarding [her] alleged comparators" such as their "positions or job requirements," their histories of discipline, the tasks they were assigned, or their years of employment. Without more, the court cannot plausibly infer similarity.

The only individual comparator mentioned by Ms. Phillips is John, a white nurse. Ms. Phillips alleges she was blamed for John's incomplete tasks and was written up for these incomplete tasks, but John was not. Compl. at ¶ 38. First, a write up itself is not an adverse employment action. *Blount v. Ajinomoto Health & Nutrition*, No. 5:20-CV-00356-FL, 2020 WL 6439167, at *3 (E.D.N.C. Aug. 14, 2020) ("But a write up by itself 'does not rise to the level of an adverse employment action.'"), *report and recommendation adopted*, No. 5:20-CV-356-FL, 2020 WL 5231489 (E.D.N.C. Sept. 2, 2020); *see also Martin v. Sunlight Fin.*, LLC, No. 3:20-CV-725-MOC-WCM, 2021 WL 3009018, at *2 (W.D.N.C. July 15, 2021). Second, the adversity Ms. Phillips did face, including her termination, was based on more than the episode with Nurse John, making him an inapt comparator. *Swaso*, 698 F. App'x at 748; *see also Martinez v. Constellis, LLC*, No. 3:19-CV-720, 2020 WL 4589194, at *4 (E.D. Va. Aug. 10, 2020) ("A plaintiff must show that [he or] she is similar in all relevant respects to [his or her] comparator." (internal quotation marks omitted)). Moreover, without some "factual enhancement," it is not plausible that Ms. Phillips was punished for Nurse John's incomplete tasks *because of* her race. Differential treatment between two individuals of different races, standing alone, is not enough to infer discrimination. *McCleary-Evans*, 780 F.3d at 588 (denying "that any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion. Such a result cannot be squared with the Supreme Court's command that a complaint must allege 'more than a sheer possibility that a defendant has acted unlawfully.'"); *see also Vincent v. AutoZone*, No. 5:20-CV-00186-M, 2020 WL 5824023, at *2 (E.D.N.C. Sept. 30, 2020) ("A speculative claim resting upon conclusory allegations *without sufficient factual enhancement* cannot survive a Rule 12(b)(6) challenge." (emphasis added)).

17

Ms. Phillips fails to plausibly allege the second and fourth elements of a Title VII claim; therefore, she fails to state a plausible claim of race discrimination.

B. Retaliation

Title VII protects two types of activities from retaliation: participation and opposition. *Brown v. Goodwill Indus. of E. N. Carolina, Inc.*, 361 F. Supp. 3d 558, 562 (E.D.N.C. 2019). Title VII's "opposition clause" makes it illegal for "an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). "[O]ppositional activity must be directed to 'an unlawful employment practice' under Title VII." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Title VII's "participation clause" makes it illegal for "an employer to discriminate against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). "A participation claim is only valid if the plaintiff acted within 'the machinery set up by Title VII.'" *Doyle v. Advanced Fraud Sols., LLC*, No. 1:18-cv-885, 2020 WL 1305162, *4 (M.D.N.C. Mar. 19, 2020).

Ms. Phillips argues WakeMed engaged in unlawful retaliation. To state a plausible retaliation claim, Ms. Phillips must allege facts sufficient to show she suffered a materially adverse action because she engaged in protected activity. The prima facie factors for retaliation require an employee to "allege that (1) [s]he engaged in protected activity; (2) [her] employer took an action against [her] that a reasonable employee would find materially adverse; and, (3) a causal connection between the protected activity and the adverse employment action." *Brown*, 361 F. Supp. 3d at 562. For protected oppositional activity, Ms. Phillips must show either she opposed conduct that was "actually violative of Title VII" or " [s]he reasonably believed that the

18

complained of conduct was unlawful." *Nathan v. Takeda Pharms. Am., Inc.*, 890 F. Supp. 2d 629, 644 (E.D. Va. 2012), *aff'd*, 544 F. App'x 192 (4th Cir. 2013) (citing *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)). As demonstrated above, Ms. Phillips did not oppose unlawful conduct. Therefore, she "must have an <u>objectively</u> reasonable belief that the conduct [she] opposed was illegal under Title VII." *Doyle*, 2020 WL 1305162, at *7 (emphasis in original); *see also id.* ("[O]bjectively 'reasonable' still means there must be a minimum level of reasonableness beyond an employee's subjective beliefs."). In addition, to establish a causal connection between her protected activity and adverse action, Ms. Phillips must plausibly allege WakeMed "understood, or should have understood, that [she] was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012). "[I]f the employer was unaware of the activity" then "no causal connection can exist between an employee's protected activity and an employer's adverse action." *Id.* at *5; *see also Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021) ("A plaintiff cannot establish the causation element of her prima facie case where the relevant decisionmaker was unaware of her protected activity.").

Ms. Phillips fails to state a retaliation claim for two reasons: (1) she does not plausibly allege that she had an "objectively reasonable belief" that her activities were in opposition to unlawful conduct; and (2) she fails to plausibly allege that WakeMed understood or should have understood her actions to be protected activity.

First, Ms. Phillips "did not harbor an objectively reasonable belief that [she was] opposing conduct made illegal by Title VII;" as a result, her "opposition activity cannot be classified as 'protected' under Title VII." *Doyle,* 2020 WL 1305162, at *3, *7. The key factor in objective reasonableness is "the facts of the case and current substantive caselaw." *Id.* at *8. Ms. Phillips's allegations relate to general workplace grievances; she does not complain about discrimination

based on a Title VII protected trait. *See Strothers v. City of Laurel*, 895 F.3d 317, 329 (4th Cir. 2018) ("In other words, 'Title VII does not prohibit all verbal or physical harassment in the workplace'—it is directed only at actions that occur 'because of' one of the protected statuses." (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) ("Although it is appropriate to construe Title VII's prohibition on retaliation generously . . . it is difficult to see how Kelly could have had even a subjectively reasonable, good-faith belief that her conduct was protected. She made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise."). Ms. Phillips alleges that she complained about unequally cancelled hours and shifts, mistreatment by co-workers and patients, and a pattern of false statements made against her, and that she filed grievances in response to WakeMed's disciplinary actions, but management would not listen to her side of the story. Compl. at ¶ 73. Importantly, all of her communications with WakeMed relate to unfair treatment with respect to ordinary workplace matters compared to *all other* nurses, without any mention of race. *See, e.g.*, Compl. at (Exhibits 1, 4, 14, 20, 21); *id.* at (Exhibit 21 at 4 ("I have been treated very wrong and different from *the other nurses* after completing additional work shifts to assist the hospital.") (emphasis added)); *Perry v. Kappos*, 776 F. Supp. 2d 182, 196 (E.D. Va. 2011) ("[U]nsupported speculation on the part of Plaintiff" is not enough for an "objectively reasonable person in Plaintiff's position [to] believe . . . that he or she was being discriminated against on the basis of race."). Ms. Phillips's opposition to "routine difference[s] of opinion and personality conflict[s] with her supervisor" are not protected activity under Title VII "[b]ecause we refuse to transmute such ordinary workplace disagreements between individuals of different races into actionable race discrimination." *Hawkins*, 203 F.3d at 276. Even taking the Complaint's allegations as true and

20

in the light most favorable to Ms. Phillips, her belief that she was engaged in Title VII protected activity is not "objectively reasonable."

Ms. Phillips argues that "there are no magical words that Plaintiff must say to trigger protected activity under Title VII" and, therefore, her complaints to her supervisors should have been understood as protected activity. Pl.'s Resp. at 10–14. Ms. Phillips argues she "participated in the grievance process . . . wherein she again complained of the 'mistreatment'" she was facing, and she "was under the belief that she was complaining of unlawful conduct, although she did not specifically state the words 'discrimination' instead labeling it as 'mistreatment.'" Pl.'s Resp. at 12. Yet, a review of the Complaint's allegations and exhibits in full demonstrates that Ms. Phillips complained about routine workplace grievances, which are not protected activities under Title VII. *See Doyle*, 2020 WL 1305162, at *13 ("All other facts mention 'favoritism' and 'misuse of company funds.' A few references by Plaintiffs to 'gender discrimination' and a 'hostile environment' do not change the nature of Plaintiffs' allegations about what they actually told [their employer]."); *Jefferies v. UNC Reg'l Physicians Pediatrics*, 392 F. Supp. 3d 620, 627 n.5 (M.D.N.C. 2019) (noting "generalized attendance complaints . . . and discrimination due to general personal animosity" are "complaints based on non-protected grounds[, which] do not constitute protected activity."). "Title VII is not a general bad acts statute . . . and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011).

Second, even if Ms. Phillips had an objectively reasonable belief that she was opposing race discrimination, her complaints to WakeMed did not convey that she was complaining about Title VII conduct. Ms. Phillips did not communicate to WakeMed, directly or indirectly, that any

21

of her disagreements and complaints were based on her race. *See Richardson v. Richland Cty. Sch. Dist.*, 52 F. App'x 615, 617 (4th Cir. 2002) ("Richardson has not presented any evidence that she informed Richland County that her complaints were based on race or age discrimination; therefore Richardson cannot show she engaged in protected activity."). As a result, WakeMed could not "have understood[ ] that the plaintiff was opposing discriminatory conduct" under Title VII. *Doyle*, 2020 WL 1305162, at *13. Ms. Phillips's allegations do not reveal any facts that would put WakeMed on notice that she was engaging in Title VII protected activity, as opposed to general workplace complaints. *See id.* Ms. Phillips did not have to use "magic words" like race discrimination for WakeMed to have reasonably understood her complaints to be Title VII protected activity; however, her grievances more obviously signaled general workplace dissatisfaction based on her perception that management was ill-informed about her job performance. *See Okoli v. City of Baltimore*, 648 F.3d 216, 224 n.8 (4th Cir. 2011) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition.") (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)). The allegations reflect that WakeMed could not have reasonably understood Ms. Phillips's general complaints to be protected activity. As such, WakeMed could not have taken adverse action against Ms. Phillips *because* she engaged in protected activity. Consequently, her retaliation claim based on her pre-discharge complaints to management fails.

Ms. Phillips alleges only one potential retaliatory action after WakeMed discharged her on July 18, 2020: WakeMed failed to schedule her second grievance hearing. Following her discharge, on July 20, Ms. Phillips called the EEOC to file a charge. Compl. at ¶ 60. Then, on July 23, she filed her second grievance with WakeMed. *Id.* at ¶ 62. Ms. Phillips argues WakeMed failed to schedule a hearing on her second grievance in retaliation for her calling the EEOC on

July 20. Compl. at ¶ 75(j) ("In retaliation to Plaintiff's protected EEOC contact, Defendant never addressed Plaintiff's grievance or scheduled a grievance meeting, even after Plaintiff's continuous follow ups."). However, she did not file her charge of discrimination with the EEOC until August 13, 2020. Def.'s Mem. at Exhibit 3.

Ms. Phillips's argument is implausible. First, Ms. Phillips does not allege that WakeMed knew about her telephone call with the EEOC. Instead, Ms. Phillips cites a link to the EEOC's policy that "[w]hen a charge is filed against an organization, the EEOC will notify the organization within 10 days." *What You Can Expect After a Charge is Filed*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed#:~:text=When%20a%20charge%20is%20filed,the%20organization%20within%2010%20days.&text=The%20EEO. However, that link has no relevance to her telephone call with the EEOC. The link suggests WakeMed would have been notified within ten days of Ms. Phillips's filing a charge with the EEOC, which occurred on August 13, 2020. Without knowledge of Ms. Phillips' telephone call to the EEOC, WakeMed could not have retaliated against Ms. Phillips *because of* the call. *Johnson*, 839 F. App'x at 784 ("A plaintiff cannot establish the causation element of her prima facie case where the relevant decisionmaker was unaware of her protected activity.").

Second, private communications with the EEOC are generally beyond the scope of an EEOC charge. *Cf. Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) ("We have noted that 'it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." (quoting *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999));

*Rios v. City of Raleigh*, No. 5:19-CV-00532-M, 2020 WL 5603923, at \*5 (E.D.N.C. Sept. 18, 2020) ("The Court's interpretation of [an] EEOC charge[ ] and the claims that are reasonably related to [it] determines the proper scope of Plaintiff's judicial complaint."). Third, Ms. Phillips's EEOC charge makes no mention of a second grievance. Def.'s Mem. at Exhibit 3. Ms. Phillips's private call is not part of her EEOC charge, and she did not plausibly allege that WakeMed knew about the call. As a result, she has failed to state a claim of retaliation.[3]

## C. Hostile Work Environment

It follows from the previous sections that Ms. Phillips has not plausibly pleaded a hostile work environment claim under Title VII. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at" discrimination "because of" one of the protected statuses. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998).[4] The elements of a Title VII hostile work environment claim are "(1) unwelcome conduct, (2) based on

---

[3] Ms. Phillips claims for the first time in her response brief that WakeMed's failure to schedule a second grievance hearing was in retaliation for her filing the EEOC charge. Pl.'s Resp. at 12, 14. The claim is not properly before this court. Again, Ms. Phillips does not mention a second grievance hearing in her EEOC Charge. Def.'s Mem. at Exhibit 3; *Rios,* 2020 WL 5603923, at \*5. What is more, her Complaint fails to allege that WakeMed's delay or denial of her second grievance hearing was in retaliation for her filing a charge. *Iqbal,* 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twomby,* 550 U.S. at 570)); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Thus, Ms. Phillips's claim that WakeMed delayed her second grievance hearing in retaliation for her filing an EEOC charge is not stated on the face of the Complaint.

[4] Ms. Phillips argues that "[i]n addition to race-based harassment, retaliatory harassment can constitute adverse employment action" for purposes of a hostile work environment claim. Pl.'s Resp. at 15. Given Ms. Phillips failed to state a race discrimination or a retaliation claim, Ms. Phillips's hostile work environment claim fails under both a race- and a retaliation-based theory. Moreover, a Title VII claim must still be based on discrimination or retaliation "because of" a protected status. *See Strothers,* 895 F.3d at 329 ("In other words, 'Title VII does not prohibit all verbal or physical harassment in the workplace'—it is directed only at actions that occur 'because of' one of the protected statuses.").

24

[Ms. Phillips's race], (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to [the employer]." *See Mativa v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001). "The critical issue, Title VII's text indicates, is whether members of one [race] are exposed to disadvantageous terms or conditions of employment to which members of the other [race] are not exposed." *Oncale*, 523 U.S. at 80 (internal quotation marks and citation omitted).

Ms. Phillips cannot show that she experienced unwelcome conduct because of her race. Instead, Ms. Phillips's allegations and exhibits demonstrate WakeMed took adverse action against her based on its perspective of her poor performance. *Infra* Section A.1. This court cannot plausibly infer that WakeMed's actions were based on Ms. Phillips's race in light of the "obvious alternative explanation" that WakeMed's actions were based on its perception of Ms. Phillips's poor performance. *McCleary-Evans*, 780 F.3d at 588. As a result, Ms. Phillips has not plausibly stated a hostile work environment claim under Title VII.

## IV.     Conclusion

The court concludes that Plaintiff's Complaint fails to state any plausible claims for relief. Therefore, Defendant's motion is GRANTED, and Plaintiff's Complaint is dismissed with prejudice.

SO ORDERED this *19th* day of October, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE